**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

STIRLING INTERNATIONAL REALTY,
INC. D/B/A STIRLING SOTHEBY'S
INTERNATIONAL REALTY and
ROGER SODERSTROM,

      Plaintiffs,

v.                              Case No:  6:14-cv-1109-Orl-40TBS

TANSEY SODERSTROM,

      Defendant.

---

### <u>ORDER</u>

This cause comes before the Court on Defendant's Motion to Dismiss (Doc. 9), filed September 18, 2014.  On October 2, 2014, Plaintiffs responded in opposition (Doc. 12).  Upon consideration, the Court grants in part and denies in part Defendant's Motion to Dismiss.

## I.  BACKGROUND[1]

This dispute arises out of the deteriorated marriage and business relationship between Roger Soderstrom ("Mr. Soderstrom") and Tansey Soderstrom ("Ms. Soderstrom").  Mr. Soderstrom incorporated co-plaintiff, Stirling International Realty, Inc. d/b/a Stirling Sotheby's International Realty ("SSIR"), on March 10, 1989.  (Doc. 1, ¶ 9).  On September 9th of the same year, Mr. and Ms. Soderstrom married.  (*Id.* ¶ 10).

---

1. This account of the facts is taken from Plaintiffs' Complaint (Doc. 1), the allegations of which the Court must accept as true in considering the instant motion to dismiss.  *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

Throughout their marriage, the Soderstroms owned and operated SSIR together as a business primarily involved in the sale of real estate in Central Florida. (*Id.* ¶¶ 11–12).

The Soderstroms' marriage had deteriorated by 2012. (*Id.* ¶ 17). As a result, Mr. Soderstrom filed for divorce on February 27, 2012. (*Id.*). The business relationship between the Soderstroms likewise deteriorated. (*Id.* ¶ 18). Mr. Soderstrom suspected that Ms. Soderstrom was misappropriating company funds to cover the legal costs of the divorce proceedings and to fund her other business ventures, among other things. (*Id.*). Due to his suspicion, SSIR removed Ms. Soderstrom from her positions as President and Broker of Record for the company in May 2013. (*Id.* ¶ 20). Mr. Soderstrom similarly suspected another employee, Pat Dusing ("Dusing"), of aiding Ms. Soderstrom's misappropriation of company funds. (*Id.* ¶ 19). SSIR terminated Dusing's employment on June 4, 2013. (*Id.* ¶ 22).

On August 27, 2013, the Soderstroms settled their divorce. (*Id.* ¶ 23). As part of their settlement agreement, the Soderstroms agreed that Mr. Soderstrom would retain SSIR, including SSIR's offices in Heathrow and Spruce Creek. (*Id.* ¶ 23(a)). In exchange, Ms. Soderstrom would retain an SSIR office located in Dr. Phillips along with other business entities owned by her and Mr. Soderstrom. (*Id.* ¶ 23(b)). Additionally, the Soderstroms agreed to immediately enter into a "transition period" for the purpose of fully separating Ms. Soderstrom from all of SSIR's business operations. (*Id.* ¶ 23(c)). To facilitate this separation, Mr. Soderstrom agreed to allow Ms. Soderstrom to keep certain SSIR closing funds that she had already moved into a separate account and income earned on certain real estate transactions completed by SSIR's Dr. Phillips office. (*Id.*

¶ 23(d)).  On August 29, 2013, the settlement agreement was approved by the state court and incorporated within the parties' final judgment of dissolution of marriage.  (*Id.* ¶ 24).

During the transition period, Ms. Soderstrom hired Dusing to work for her at SSIR's Dr. Phillips office.  (*Id.* ¶ 28).  Ms. Soderstrom purchased a used computer for Dusing to use in the performance of her duties.  (*Id.* ¶ 29).  On January 30, 2014, Mr. Soderstrom received correspondence from Ms. Soderstrom's divorce attorney stating that "literally thousands of emails between May 2013 and the end of December 2013" that belonged to Mr. Soderstrom had been "inadvertently transferred onto [Dusing's] computer" through an alleged technological error.  (*Id.* ¶¶ 30–31).  Upon investigation, Mr. Soderstrom discovered that Dusing's SSIR email account was used to access his email from the Dr. Phillips office on December 27, 2013.  (*Id.* ¶ 40).  Mr. Soderstrom's investigation further revealed that Dusing's email account was then used to forward these emails to Dr. Elias Jacobo ("Jacobo"), who had since entered into a relationship with Ms. Soderstrom.  (*Id.* ¶¶ 40–42).  Mr. Soderstrom believes that Ms. Soderstrom is the individual who accessed his email account without authorization and forwarded emails to Jacobo.  (*Id.* ¶ 45).  Mr. Soderstrom states that Ms. Soderstrom also forwarded his emails to her divorce attorney.  (*Id.* ¶ 46).  Ms. Soderstrom's divorce attorney then used these emails to move the state court to set aside the Soderstroms' divorce settlement agreement.  (*Id.* ¶ 47).

Plaintiffs initiated this action on July 10, 2014 by filing the Complaint, which alleges four claims for relief.  Count 1 alleges a violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  (*Id.* ¶¶ 49–57).  Count 2 alleges a violation of the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–2712.  (*Id.* ¶¶ 58–68).  Count 3 alleges a claim for invasion of privacy.  (*Id.* ¶¶ 69–75).  Finally, Count 4 alleges a claim for

declaratory and injunctive relief.  (*Id.* ¶¶ 76–82).  Defendant, proceeding *pro se*, now moves to dismiss the Complaint for failing to state claims upon which relief can be granted.  (Doc. 9).

## II.  STANDARD OF REVIEW

In order to survive a motion to dismiss made under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  A claim is plausible on its face when the plaintiff alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Mere legal conclusions or recitation of the elements of a claim are not enough.  *Twombly*, 550 U.S. at 555.  District courts must accept all well-pleaded allegations within the complaint as true.  *Id.*  Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).

## III.  DISCUSSION

### A.    Count 1: The Computer Fraud and Abuse Act

Although primarily a criminal statute, the CFAA provides a private right of action to any person who incurs damages or loss from a violation of its provisions.  18 U.S.C. 1030(g).  Plaintiffs allege that Ms. Soderstrom violated § 1030(a)(2)(C) of the CFAA. (Doc. 1, ¶¶ 54–56).  In order to state a claim under that provision, Plaintiffs must establish four elements: (1) Ms. Soderstrom intentionally accessed a protected computer, (2) Ms. Soderstrom lacked authorization or exceeded her authorized access to the computer, (3) Ms. Soderstrom obtained information from the computer, and (4) Ms. Soderstrom

caused at least $5,000 in loss to Plaintiffs. *Clarity Servs., Inc. v. Barney*, 698 F. Supp. 2d 1309, 1313 (M.D. Fla. 2010). Ms. Soderstrom challenges Plaintiffs' CFAA claim on three grounds, only one of which the Court need examine in order to dismiss Count 1. Ms. Soderstrom contends that Plaintiffs have failed to allege at least $5,000 in loss. (Doc. 9, ¶¶ 13–17).

The CFAA requires that any civil action brought for a violation of its provisions involve one of the factors listed in § 1030(c)(4)(A)(i)(I)–(V) of the statute. 18 U.S.C. § 1030(g). The only factor relevant to the instant case is that Plaintiffs must have incurred "loss . . . during any 1-year period . . . aggregating at least $5,000 in value." *Id.* § 1030(c)(4)(A)(i)(I). The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11). District courts within Florida's Middle District interpret this definition of "loss" to include two subtypes of loss that may be alleged: (1) costs incurred due to investigating, responding to, and correcting damage caused by a violation, and (2) costs incurred, revenue lost, or other damages resulting from an interruption of service. *E.g.*, *Aquent LLC v. Stapleton*, No. 6:13-cv-1889-Orl-28DAB, 2014 WL 5780293, at *3 & n.6 (M.D. Fla. Nov. 5, 2014); *Klein & Heuchan, Inc. v. Costar Realty Info, Inc.*, No. 8:08-cv-1227-T-30EAJ, 2009 WL 963130, at *3 (M.D. Fla. Apr. 8, 2009). In any case, the total sum of loss alleged must equal or exceed $5,000. *Stapleton*, 2014 WL 5780293, at *3.

Plaintiffs allege in their Complaint that they "have been and continue to be damaged by [Ms. Soderstrom's] wrongful conduct" and that their "damages have amounted in an aggregated loss of over $5,000 during a one-year period." (Doc. 1, ¶ 56). Plaintiffs do not allege that they have investigated, responded to, or corrected damage caused by a violation of the CFAA.   Instead, Plaintiffs submit that the Court can reasonably infer that they had to investigate, respond to, or correct damage by the mere fact that there was a violation and that the costs associated with these actions exceeded $5,000.  (Doc. 12, p. 8).

However, the Court is unable to accept that every violation of the CFAA results in investigative and corrective costs of $5,000 or more.  Based on the lack of factual content in the Complaint suggesting that Plaintiffs investigated, responded to, or corrected damage from Defendant's alleged violation of the CFAA and that these corrective efforts cost Plaintiffs at least $5,000, the Court cannot conclude that Plaintiffs have raised their losses above a speculative level.  *See Klein & Heuchan*, 2009 WL 963130, at *4 (finding that a counter-plaintiff failed to allege loss under the CFAA where it did not allege that it incurred any "expense to minimize damage to its assets and/or to put itself in the same position it was before the violation").

Plaintiffs also do not allege any interruption of service, thus precluding costs, lost revenue, or other damages resulting from such an interruption.  For these reasons, Plaintiffs have failed to sufficiently allege that they have incurred losses equal to or greater than $5,000 as a result of Ms. Soderstrom's alleged violation of the CFAA.  Count 1 will be dismissed without prejudice with leave for Plaintiffs to amend, if they deem appropriate, as discussed in Section III.E, *infra*.

**B.     Count 2: The Stored Communications Act**

Like the CFAA, the SCA also provides a private right of action to persons aggrieved by a violation of its provisions.  18 U.S.C. § 2707(a).  In order to state a claim under the SCA, a plaintiff must demonstrate two elements: (1) the defendant "intentionally access[ed] without authorization a facility through which an electronic communication service is provided" or "intentionally exceed[ed] an authorization to access that facility," and (2) the defendant "obtain[ed], alter[ed], or prevent[ed] authorized access to a wire or electronic communication while it is in electronic storage in such system."  *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1321 (11th Cir. 2006) (quoting 18 U.S.C. § 2701(a)) (internal quotation marks omitted); *Vista Mktg., LLC v. Burkett*, No. 8:12-cv-1640-T-30TBM, 2014 WL 3887729, at *2–3 (M.D. Fla. Aug. 7, 2014).  Ms. Soderstrom attacks Plaintiffs' SCA claim on three grounds, only one of which the Court need address in order to dismiss Count 2.  Ms. Soderstrom contends that Plaintiffs fail to allege a "facility" within the meaning of the SCA.  (Doc. 9, ¶ 32).

While there is certainly disagreement among the district courts that have considered the question, this Court tends to side with those cases finding that a personal computer or device such as the one belonging to Plaintiffs does not constitute a "facility" within the meaning of the SCA.  Although Congress failed (or perhaps opted not to) define the term "facility" in the SCA, *see* 18 U.S.C. § 2711, the Fifth Circuit adeptly examined which "facilities" are protected by the statute in *Garcia v. City of Laredo, Texas*, 702 F.3d 788 (5th Cir. 2012):

> A number of district courts . . . have also concluded that "the relevant 'facilities' that the SCA is designed to protect are not computers that *enable* the use of an electronic communication service, but instead are facilities that are *operated by*

electronic communication service providers and used to store and maintain electronic storage."

. . . .

Thus these courts agree that a "home computer of an end user is not protected by the SCA."  As explained by Orin Kerr in his widely cited law review article, the words of the statute were carefully chosen: "[T]he statute envisions a *provider* (the ISP or other network service provider) and a *user* (the individual with an account with the provider), with the *user's communications in the possession of the provider.*"

This reading of the statute is consistent with legislative history, as "[Congress'] entire discussion of [the SCA] deals only with facilities operated by electronic communications services such as 'electronic bulletin boards' and 'computer mail facilit[ies],' and the risk that communications temporarily stored in these facilities could be accessed by hackers.  It makes no mention of individual users' computers . . . ."

*Id.* at 792–93 (citations and footnotes omitted) (emphasis in original); *see also United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003) (holding that the SCA did not apply where the defendant hacked into a computer to download images because the computer was not a provider of any sort); *cf. Morgan v. Preston*, No. 3:13-00403, 2013 WL 5963563, at *5 & nn.3–4 (M.D. Tenn. Nov. 7, 2013) (noting that "the overwhelming body of law" supports the conclusion that the SCA protects "only facilities operated by electronic communications services such as electronic bulletin boards and computer facilities").  Ultimately, the *Garcia* court determined that end user devices such as personal computers, laptops, and cellular phones are not "facilities" covered by the SCA.  *Garcia*, 702 F.3d at 793.

In the Complaint, Plaintiffs allege that Mr. Soderstrom's "email was accessed without authorization and forwarded without authorization by [Ms. Soderstrom]." (Doc. 1, ¶ 45).  This unauthorized access was allegedly achieved by Ms. Soderstrom using the

computer located at the Dr. Phillips office to access Mr. Soderstrom's email account.  (*Id.* ¶ 40).  Presumably, Ms. Soderstrom would have had to remotely access either Plaintiffs' computer or Mr. Soderstrom's email account.  However, following "the overwhelming body of law" which concludes that a personal computer is not a "facility," the Court finds that any violation of the SCA cannot be premised on the unauthorized access of Plaintiffs' computer.  *Morgan*, 2013 WL 5963563, at *5.

If Plaintiffs intend to premise liability under the SCA on Ms. Soderstrom's unauthorized access of Mr. Soderstrom's email account (*see* Doc. 12, p. 15), the allegations within the Complaint do not support that Plaintiffs have standing to bring their claim.  Plaintiffs do not allege sufficient facts to demonstrate that they are electronic communication service providers who operate a facility such as an electronic bulletin board or a mail facility.  *See Garcia*, 702 F.3d at 792–93.  Rather, Plaintiffs only offer the conclusory allegation that "SSIR provided electronic communications services to its employees, including SSIR email accounts hosted on an SSIR email system"  (Doc. 1, ¶ 14).  Without more, the Court is unable to find that Plaintiffs have plausibly alleged a "facility" within the meaning of the SCA.

It may be true that Ms. Soderstrom violated the SCA by allegedly accessing Mr. Soderstrom's emails.  However, as the Complaint currently stands, the Court cannot reasonably infer that this is Plaintiffs' claim to make.  The Court will grant the motion to dismiss as to Count 2 with leave for Plaintiffs to amend, if they deem appropriate, as discussed in Section III.E, *infra*.

### C.     Count 3: Invasion of Privacy[2]

Count 3 of the Complaint alleges a claim for invasion of privacy arising under Florida common law.  (Doc. 1, ¶¶ 69–75).  Florida recognizes three types of invasion into one's privacy: (1) appropriation, (2) intrusion, and (3) public disclosure of private facts. *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1308 (M.D. Fla. 2010), *aff'd*, 627 F.3d 833 (11th Cir. 2010); *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). Plaintiff submits that the Complaint alleges plausible claims for intrusion and for public disclosure of private facts.  (Doc. 12, p. 18).  The Court therefore limits its analysis to those varieties of the tort.

In order to state a claim for public disclosure of private facts, a plaintiff must show "(1) the publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern." *Tyne ex rel. Tyne v. Time Warner Entm't Co., L.P.*, 204 F. Supp. 2d 1338, 1344 (M.D. Fla. 2002) (quoting *Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989)) (internal quotation marks omitted).

Count 3 of the Complaint fails to allege that the private facts disclosed are offensive.  Mr. Soderstrom does not state the contents or subject matter of the emails allegedly accessed by Ms. Soderstrom.  Moreover, the message portion of all of the emails attached to the Complaint as Composite Exhibit 2 are redacted in their entirety. (Doc. 1, Comp. Ex. 2).  Finally, the correspondence from Defendant's attorney informing Plaintiff of the transferred emails describe their content as arrangements to speak with other persons or to review emails.  (*Id.*, Ex. 1).  Based on these limited factual allegations,

---

2. Count 3 of the Complaint is asserted by Mr. Soderstrom only.  (*See* Doc. 1, ¶¶ 70–75).

the Court cannot reasonably infer that the private facts disclosed are offensive. Accordingly, Count 3 cannot state a claim for invasion of privacy by public disclosure of private facts.

In order to state a claim for intrusion, a plaintiff must show that the defendant physically or electronically intruded into his private quarters or affairs and that this intrusion "would be highly offensive to a reasonable person." *Purrelli v. State Farm Fire & Cas. Co.*, 968 So. 2d 618, 620 (Fla. Dist. Ct. App. 1997) (citing Restatement (Second) of Torts § 652B); *see also Oppenheim*, 695 F. Supp. 2d at 1308.   Ms. Soderstrom attacks Mr. Soderstrom's intrusion claim on the grounds that he has failed to allege facts indicating that the intrusion would be highly offensive to a reasonable person.  (Doc. 9, ¶¶ 40–44).

For an intrusion to be sufficiently offensive, the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be deemed utterly intolerable in a civilized community."  *Oppenheim*, 695 F. Supp. 2d at 1309 (quoting *Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062 (Fla. Dist. Ct. App. 1991)) (internal quotation marks omitted).   Neither party has cited a controlling case which applies Florida law to facts similar to those presented here. However, other jurisdictions that apply the same common law principles as Florida regarding invasion of privacy have found the intentional interception of another's email to be sufficiently offensive to sustain a claim based on intrusion.  For example, in *Lazette v. Kulmatycki*, 949 F. Supp. 2d 748, 760 (N.D. Ohio 2013), the court found that an employer's unauthorized access of its employee's personal emails was sufficient to allege a highly offensive intrusion.  *See also, e.g.*, *Powell v. Yellow Book USA, Inc.*, 445 F.3d

1074, 1080 (8th Cir. 2006) (speculating that reading someone's email without permission would be enough to state a claim for intrusion); *Coalition for an Airline Passengers' Bill of Rights v. Delta Air Lines, Inc.*, 693 F. Supp. 2d 667, 675 (S.D. Tex. 2010) (finding that stealing another's personal correspondence from his computer is offensive enough to constitute intrusion); *cf. Brown-Criscuolo v. Wolfe*, 601 F. Supp. 2d 441, 455 (D. Conn. 2009) (holding that unauthorized access of email is sufficient to allege outrageous conduct for an intentional infliction of emotional distress claim).[3]  Using similar principles, courts likewise find that the unauthorized reading of another's physical mail is sufficiently offensive to maintain an action for intrusion.  *E.g.*, *Vernars v. Young*, 539 F.2d 966, 969 (3d Cir. 1976); *Shows v. Morgan*, 40 F. Supp. 2d 1345, 1362–63 (M.D. Ala. 1999).

In the instant case, Mr. Soderstrom alleges that the computer at Ms. Soderstrom's office was used to access his email and forward the email to Ms. Soderstrom's boyfriend. (Doc. 1, ¶¶ 40–42, 45).  Mr. Soderstrom also alleges that Ms. Soderstrom gave access to his email account to her attorney in order to obtain an advantage in their divorce proceedings.  (*Id.* ¶¶ 46–47).  In light of the cases cited above, the Court has no trouble finding that Ms. Soderstrom's unauthorized access to Mr. Soderstrom's email account and subsequent forwarding of said emails to her boyfriend and attorney, if proven, would be highly offensive to a reasonable person.  Therefore, Mr. Soderstrom states a viable claim for invasion of privacy by intrusion and the motion to dismiss will be denied as to Count 3.

---

3. Florida courts frequently look to cases interpreting the outrageousness prong of intentional infliction of emotional distress claims when determining whether an intrusion is sufficiently offensive.  *Stoddard*, 573 So. 2d at 1062.

### D.    Count 4: Declaratory Judgment[4]

Claims for declaratory judgment such as that alleged in Count 4 of Plaintiffs'

Complaint are governed by the Declaratory Judgment Act, 28 U.S.C. § 2201.  The Act

provides:

> In a case of actual controversy within its jurisdiction . . . any
> court of the United States, upon the filing of an appropriate
> pleading, may declare the rights and other legal relations of
> any interested party seeking such declaration, whether or not
> further relief is or could be sought.  Any such declaration shall
> have the force and effect of a final judgment or decree and
> shall be reviewable as such.

28 U.S.C. § 2201(a).  Ms. Soderstrom challenges Plaintiffs' claim for declaratory judgment

on the basis that there is no actual controversy between the parties because Plaintiffs

have failed to properly state any other claim for relief.  (Doc. 9, ¶ 45).

"The standard for determining whether an 'actual controversy' exists within the

meaning of the Declaratory Judgment Act is the same as that under the 'case or

controversy' requirement of Article III of the Constitution."  *Gianassi v. State Farm Mut.*

*Auto. Ins. Co.*, No. 6:14-cv-1078-Orl-31TBS, 2014 WL 4999443, at *4 (M.D. Fla. Oct. 7,

2014).  To that end, the United States Supreme Court has defined "controversy" as "one

that is appropriate for judicial determination," and, "definite and concrete, touching the

legal relations of parties having adverse legal interests.*"  Aetna Life Ins. Co. of Hartford,*

---

4. Count 4 of the Complaint is additionally titled as a claim for injunctive relief.  (Doc. 1,
p. 19).  However, injunctive relief is not a claim in and of itself, but rather a remedy
that may be awarded upon a finding of liability.  *Moran v. Crystal Beach Capital, LLC*,
No. 8:10-cv-1037-T-30AEP, 2011 WL 17637, at *4 (M.D. Fla. Jan. 4, 2011).  Because
this case is still in the pleading stage, it is too early for the Court to examine whether
or not Plaintiffs are entitled to injunctive relief.  Therefore, the Court limits its discussion
of Count 4 to Plaintiffs' claim for declaratory judgment.

*Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937).  As a corollary, disputes that are moot, hypothetical, abstract, or merely academic do not present judiciable controversies.  *Id.*

Ms. Soderstrom relies entirely on her assertions that Plaintiffs have failed to allege proper claims for violations of the CFAA and SCA and for invasion of privacy.  (Doc. 9, ¶ 45).   However, as discussed above, the Complaint alleges a definite and concrete dispute between Plaintiffs and Ms. Soderstrom as to whether Ms. Soderstrom invaded Mr. Soderstrom's privacy by intrusion.  Finding that the Complaint alleges a controversy that is "appropriate for judicial determination," the Court will deny the motion to dismiss as to Count 4.  *Haworth*, 300 U.S. at 240.

### E.    Leave to Amend

It is well-settled that a court should not dismiss a plaintiff's complaint for failing to state a claim without first granting leave to amend.   *Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307 (11th Cir. 1983).  Nevertheless, a court may dismiss a claim without affording an opportunity to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendment previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Ms. Soderstrom requests the Court to dismiss with prejudice any of Plaintiffs' counts that the Court determines fails to state a claim upon which relief can be granted. (Doc. 9, p. 22).  However, the Court finds that dismissal of Counts 1 and 2 with prejudice is inappropriate at this juncture.  Plaintiffs have not yet been afforded an opportunity to amend in these proceedings and the Court does not see any of the factors listed in *Bryant*

present here.  Accordingly, Plaintiffs will be granted leave to amend their CFAA and SCA claims if they deem it appropriate.

## IV.    CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (Doc. 9) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendant's Motion to Dismiss (Doc. 9) is **GRANTED** as to Counts 1 and 2. Counts 1 and 2 of the Complaint are **DISMISSED WITHOUT PREJUDICE**.

2. Defendant's Motion to Dismiss (Doc. 9) is otherwise **DENIED**.

3. Plaintiffs have **fourteen (14) days** from the date of this Order to file an amended complaint in order to re-allege their claims under the Computer Fraud and Abuse Act and the Stored Communications Act, if appropriate. If Plaintiffs file an amended complaint within the time provided, Defendant has **fourteen (14) days** from the date Plaintiff files the amended complaint to respond.

**DONE AND ORDERED** in Orlando, Florida on January 28, 2015.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties