UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STIRLING INTERNATIONAL REALTY, INC.,
and ROGER SODERSTROM,

      Plaintiffs,

v.                                                    Case No.  6:14-cv-1109-Orl-40TBS

TANSEY SODERSTROM,

      Defendant.
_____/

## ORDER

This case comes before the Court on Plaintiff's Motion for Protective Order (Doc. 23).[1]  For the reasons that follow, the motion is due to be denied.

Plaintiff Roger Soderstrom incorporated Co-Plaintiff Stirling International Realty, Inc. (the "Company") on March 10, 1989 (Doc. 1, ¶ 9).  Approximately six months later, Roger married Defendant Tansey Soderstrom (Id., ¶ 10).  During their marriage, Roger and Tansey owned and operated the Company, which became an asset of the marriage (Id., ¶ 12).

The marriage deteriorated and in 2012, Roger filed a petition for dissolution of marriage.  Tansey answered and counter-petitioned to dissolve the marriage (Id., ¶ 17).  Roger and Tansey's business relationship also deteriorated and by 2013, Roger suspected Tansey was diverting Company funds (Id., ¶ 18).  He also suspected that an employee named Pat Dusing was helping Tansey conceal the diversion of the Company's money (Id., ¶ 19).  In May 2013, Tansey was removed from her positions

---

[1] Plaintiff also sought expedited review of his motion, which the Court denied (Doc. 24).

as the Company's president and broker of record and in June, the Company terminated Pat Dusing's employment (Id., ¶¶ 20, 22).

In August 2013, Roger and Tansey agreed on the terms for dissolution of their marriage. Pursuant to their agreement, Roger retained the Company except for the Dr. Phillips office which Tansey received as her property. Roger and Tansey also agreed that their business operations would be fully separated no later than December 31, 2013 (Id., ¶ 23). The state court approved the agreement and Roger and Tansey's marriage was dissolved on August 29, 2013 (Id., ¶ 24).

In September 2013, Tansey hired Pat Dusing and purchased a used computer for her use (Id., ¶¶ 26, 29). On December 27, 2013, Ms. Dusing's email account was used to access Roger's email without his knowledge or consent (Id., ¶ 40). In January, 2014, Tansey's lawyer informed Roger that "literally thousands of emails between May 2013 and the end of December 2013" that belonged to Roger had come into her possession after being "inadvertently transferred onto Pat Dusing's computer when Protechnica set up her computer after Tansey rehired her for the Dr. Phillips office" (Id., ¶ 30). Copies of the emails show that they were accessed and forwarded to an email address belonging to Dr. Elias Jacobo, a Central Florida physician with whom Tansey began an intimate relationship in July 2013 (Id., ¶¶ 41-42). Roger suspects Tansey accessed and forwarded his emails to Dr. Jacobo (Id.). Tansey relied on the emails to file a motion in state court seeking relief from the final judgment dissolving the marriage and to set aside the parties' settlement agreement based upon fraud in the divorce case (Id., ¶¶ 47).

After learning that Tansey had obtained his email, Roger and the Company filed this lawsuit alleging violations of the Computer Fraud and Abuse Act, as Amended by the USA Patriot Act of 2001, 18 U.S.C. § 1030; violations of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, invasion of privacy, and for declaratory and injunctive relief (Doc. 1).[2]

On December 22, 2014, Roger noticed Tansey, Dr. Jacobo and two other witnesses for depositions to occur between January 28 and 30, 2015 (Doc. 29, ¶ 1). Tansey informed Roger's lawyer that she wanted Dr. Jacobo to be present at her deposition because she anticipated that they would be asked similar questions (Doc. 23 at 4). Roger objected and cancelled all four depositions. He also filed the pending motion asking the Court to exclude Dr. Jacobo from Tansey's deposition, and to preclude the doctor from reading or being otherwise informed about Tansey's deposition testimony (Doc. 23 at 6-7).

Roger argues that a protective order should be entered because (1) Dr. Jacobo is a material witness with whom Tansey is in an intimate relationship, (2) the doctor is the person Tansey allegedly forwarded Roger's emails to, (3) if Dr. Jacobo is allowed to attend Tansey's deposition he will learn relevant information, and (4) if Dr. Jacobo knows what Tansey says at her deposition then he may alter his testimony accordingly (Id., at 4-5). Roger asserts that if the collusion he fears occurs, it will interfere with the orderly administration of justice (Id.).

---

[2] On January 28, 2015, the Court dismissed Roger's claims under the Computer Fraud and Abuse Act and the Stored Communications Act without prejudice, with leave to amend (Doc. 28).

Tansey, who is representing herself, counters that from about July of 2013 to June of 2014, Dr. Jacobo served as the records custodian for her company, Tansey Soderstom, PA and Real Estate Firm of Orlando (Doc. 29, ¶ 1). She claims that Dr. Jacobo's attendance at her deposition is essential to the presentation of her defense and that without his assistance, she will be unduly prejudiced because she will not be able to adequately present her defense. She also argues that it is the general policy of this district to allow for the presence of records custodians at depositions. (Id., ¶¶ 5-6). Tansey bases her arguments on Federal Rule of Evidence 615 and the Middle District Discovery Handbook (2001) at pages 5-9.[3]

Tansey's reliance on FRE 615 and the Discovery Handbook is misplaced. First, FRE 615 does not apply to depositions. FED.R.CIV.P. 30(c)(1); David v. Signal International, LLC, 2014 WL 2581319 at *1 (E.D.La. May 14, 2014). Second, the Discovery Handbook, while useful and persuasive, does not enact or codify the rules for discovery. As the introduction makes clear, the Discovery Handbook is simply an attempt to capture the policies and practices that have developed in the Middle District of Florida to fill the gaps that exist in the Federal Rules of Civil Procedure and the District's Local Rules.

Tansey's argument that she will be prejudiced if Dr. Jacobo is not present at her deposition is also rejected because it is nothing more than a conclusion, unsupported by specific, articulated facts.

---

[3] Concerning who may attend a deposition, the Discovery Handbook states "[l]awyers may also be accompanied by records custodians ... and the like, even though they may be called as technical witnesses on such questions as chain of custody, the foundation for the business record rule, or other technical matters." Section II.A.2.

Roger's motion invokes FED.R.CIV.P. 26(c), which provides *inter alia*, that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... designating the persons whom may be present while the discovery is conducted." FED.R.CIV.P. 26(c)(1)(E).  Thus, good cause is the standard.  The Eleventh Circuit has explained that: "'Good cause' is a well established legal phrase.  Although difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action."  In re Alexander Grant & Co. Litigation, 820 F.2d 352, 356 (11th Cir. 1987).

"While Rule 26(c) articulates a single standard for ruling on a protective order motion, that of 'good cause,' the federal courts have superimposed a somewhat more demanding balancing of interests approach to the Rule."  Farnsworth v. Proter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985).  Using this approach, the court "should balance the non-moving party's interest in obtaining discovery and preparing for trial against the moving party's proffer of harm that would result from the deposition."  Baratta v. Homeland Housewares, LLC, 242 F.R.D. 641, 642 (S.D.Fla. 2007) (citing Farnsworth)).

The burden is on the party seeking the protective order to show good cause. "The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will result without one. "Baratta v. Homeland Housewares, LLC, 242 F.R.D. 641, 642 (S.D.Fla. 2007) (citing Dunford v.

Rolly Marine Service, Co., 233 F.R.D. 635, 636 (S.D.Fla.2005)).  If the movant demonstrates good cause, then the burden shifts to the opponent to explain why the protective order is not necessary.  Wreal LLC v. Amazon.Com, Inc., Case No. 14-21385-CIV, 2014 WL 7273852 at *3 (S.D.Fla. Dec. 19, 2014) (citing Am. Standard Inc. v. Pfizer, 828 F.2d 734, 741 (Fed.Cir. 1987).

Reasons the Court might exclude a person from a deposition include to prevent the possible intimidation of another attendee, or if exclusion was necessary to protect a legitimate privacy interest.  Those concerns are not present here.  Instead, Roger has a generalized concern that Dr. Jacobo cannot be trusted to tell the truth and that he will tailor his testimony to aid Tansey.  While Roger's concern is understandable, more specific, direct evidence and/or articulated reasoning is required before the Court will issue the requested protective order.

The Court also notes that Tansey and Dr. Jacobo have had more than enough time to discuss what occurred and agree on their testimony if that is their intent.  And, if they have not already colluded regarding their testimony then Roger has not explained why his concerns cannot be alleviated by deposing Dr. Jacobo first.

Accordingly, Roger's motion for a protective order is DENIED.

**DONE AND ORDERED** in Orlando, Florida, on February 4, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies to:

     All Counsel
     Tansey Soderstrom